James Averill, Jr., Respondent, *v.* Louis W. Emerson, Appellant.

*Compulsory reference of an action triable by the court without a jury, when the examination of an account is dependent upon the establishment of precedent issues.*

A compulsory reference, under section 1013 of the Code of Civil Procedure, is not justified in an equitable action for an accounting, when it is not apparent that the trial will necessarily involve the examination of a long account, but it is apparent that no such examination will be necessary or material unless the relation of co-partners or the existence of a community of interests between the parties, alleged affirmatively in the complaint and put in issue by a denial in the answer, is first established on the trial.

Appeal by the defendant, Louis W. Emerson, from an order of the Supreme Court, made at Special Term and entered in the office of the clerk of Clinton county on the 17th day of March, 1893, directing a reference.

*Wm. J. Roche*, for the appellant.

*Frank E. Smith*, for the respondent.

Mayham, P. J.:

The plaintiff moved for and obtained an order referring the issue in this action to a referee to hear and determine.

The motion was made upon the pleadings and an affidavit of the plaintiff's attorney, and also an affidavit of the defendant, which had been used on his behalf on a motion to change the place of trial. The complaint, among other things, alleged that S. Alonzo Kellogg had and possessed the promise of the warden of Clinton Prison of a contract for the sale of articles manufactured in that prison, and that he and defendant entered into an agreement whereby Kellogg agreed to surrender such option and obtain the consent of such warden, and have such contract made in the name of the defendant or some person satisfactory to such warden, to be named by the defendant, whereby the defendant or such other person named by him should sell all the shirts manufactured in such prison for three years, and should receive a commission, after guaranteeing all sales made on credit, of ten per cent on all sales made within that time, and that the defendant, in consideration thereof and of other good considerations, agreed to pay over to said Kellogg one-half of such net commission so received by him from time to time on demand.

The complaint also alleged that the defendant named his brother, James A. Emerson, and the contract was made with the defendant in the name of James A. Emerson. The written contract was attached to and made a part of the complaint.

The complaint also alleged that the defendant made sales under such contract from time to time, to many persons and in many places, amounting to over $500,000, and alleged demands by Kellogg of his share of the commissions under the contract, which defendant had refused to pay. The complaint also alleged an assignment of the alleged claim of Kellogg to the plaintiff.

The answer denies ever making such arrangement with Kellogg, as set out in the complaint, or any arrangement by which Kellogg was to share in the commissions which were received for selling these prison-manufactured goods, and also denies that the contract set out in the complaint is the contract under which such goods were sold. The answer alleges the making of a contract between the warden of said prison and James A. Emerson, and alleges that at the time of making the same Kellogg and his firm were acting therein as the attorneys for the warden, and not for the defendant or the said James A. Emerson, and was not a party in interest with them or either of them. The answer also denies that the defendant

was a party to or interested in the contract between the warden and James A. Emerson.

That answer also alleges that James A. Emerson, after procuring the contract, entered into an agreement with the Empire Shirt Company, a co-partnership consisting of himself and Louis Weinman, for putting such goods upon the market. The answer admits numerous sales of goods, and does not deny that they were sold at different times to different persons and at different places as alleged in the complaint.

Defendant by the answer expressly denies that he was a member of the Empire Shirt Company, and that any partnership existed between him and Kellogg, and states that no contract or agreement, such as set out in the complaint, existed between them or that any contract or agreement of co-partnership existed between them.

The moving affidavit stated that the action was for an accounting by the defendant of all the moneys paid to him, and expenses incurred by him on account of transactions entered into by him under the contract or arrangement with Kellogg set out in the complaint. And alleged on information and belief the receipt by the defendant of large sums of money on account of such alleged contract.

The affidavit of Louis W. Emerson in opposition to this motion sets up at great length a reiteration of the facts in the answer, and contradicts some of the alleged personal transactions between him and Kellogg set out in the moving affidavits.

It is quite apparent from the pleadings and affidavits used on this motion, that if the action could be regarded as one solely for an accounting by the defendant, upon the theory of the plaintiff's complaint, and of the relations between defendant and the plaintiff's assignor, as therein set forth, that this would be a proper case for a reference within most, if not all, of the authorities. But it seems quite apparent that in determining whether or not a compulsory reference is allowable, the court must look at the issues tendered by the pleadings, and which on the trial it will be required to determine.

No inquiry into the sales or commissions under or arising out of the contract set out in the plaintiff's complaint would be necessary or material unless the relation of co-partners, or a community of interest is established between the defendant and the plaintiff's

assignor, such as is alleged on the part of the plaintiff in his complaint.

That relation is denied by the answer, and the issue tendered by that denial becomes one of the leading features and grounds of contention in this action.

This being an equitable action triable by the court, and no issues having been settled to be submitted to a jury, as required by the rules and practice of this court, it is quite clear that a jury trial cannot now be insisted upon by either party.

Is it referable against the objections of the defendant under section 1013 of the Code of Civil Procedure ? The language of that section is as follows : " The court may of its own motion or upon the application of either party, without the consent of the other, direct a trial of the issues of fact by a referee where the trial will require the examination of a long account on either side, and will not require the decision of difficult questions of law. In an action triable by the court, without a jury, a reference may be made as prescribed by this section, to decide the whole issue or any of the issues, or to report the referee's finding upon one or more specific questions of fact involved in the issue." Two conditions referred to must appear to the court before granting a reference in cases triable by the court :

*First.* Where the trial will *require* the examination of a long account.

*Second.* Where the trial will not require the decision of difficult questions of law.

It is by no means certain that the trial of this action will involve the examination of a long account. To assume that, will involve also the assumption in advance of the trial, that the plaintiff will establish the contractual relations between the defendant and his assignor set up in the complaint.

This the court cannot determine in advance.

In *Thayer* v. *McNaughton* (117 N. Y. 111) ANDREWS, J., says : " It is not enough to justify a compulsory reference that the case may by possibility involve the examination of a long account.

" There must be enough alleged or shown to justify an inference that that will be the course of the trial. The same rule applies to equitable as to legal actions. In neither case can a compulsory ref-

erence be ordered unless the trial will require the examination of a long account. * * * But the power of the court to order the reference is limited by the general condition contained in the first clause of section 1013, which is alike applicable to cases triable by the court and cases triable by jury. (*Camp* v. *Ingersoll*, 86 N. Y. 433 ; *Barnes* v. *West,* 16 Hun, 68 ; *Read* v. *Lozin*, 31 id. 286.)"

It is difficult to distinguish the principle involved in this decision from the one involved in the determination of the case at bar. As this is one of the latest utterances of the Court of Appeals on this subject to which my attention has been directed, I think it must control in the decision of this appeal.

It is true that we are referred by the learned counsel for the respondent to the case of *Brown* v. *Finch* (45 N. Y. St. Repr. 327 ; affd., 133 N. Y. 671), without comment or opinion, but in that case it is evident, from the brief statement in the opinion of the General Term, that that court put its decision on the express ground that it appeared affirmatively that at some stage of the action the examination of a long account must be had. It also appears that the objection that the case was not referable grew out of affirmative matter of defense set up in the answer.

That case is unlike this. Here the objection that the case is not referable grows out of affirmative allegations in the complaint which are put in issue by a denial of the answer.

Nor is it quite clear that the other condition which may stand in the way of a compulsory reference does not exist in this case. It is not quite clear that the manner in which the plaintiff claims to connect the assignor with the defendant, and thus to connect them both with the profits of the contract, in writing, to which neither of them are parties, will not present difficult questions of law which, within the provisions of section 1013 of the Code, would render this action not one in which an involuntary reference can be ordered by the court.

We are, therefore, of the opinion that the order awarding a reference and appointing a referee in this case should be reversed.

PUTNAM and HERRICK, JJ., concurred.

Order reversed, with ten dollars costs and printing disbursements.